[Civ. No. 6573.   Third Dist.—June 12, 1941.]

Estate of KARL RUPRECHT RAENTSCH, Deceased. KARL L. A. RAENTSCH et al., Appellants, v. IDA M. ARMSTRONG et al., Respondents.

Marvin C. Hix for Appellants.

White & Harber for Respondents.

PULLEN, P. J.—This is an appeal from a judgment admitting a will to probate, it being the claim of appellants that the admitted instrument had been revoked by a later

will, which could not be found after the death of the testator.

Karl R. Raentsch, the deceased, was the son of appellant Karl L. A. Raentsch, and of Carrie Armstrong Raentsch, who died when he was quite young. He then went to live with his maternal grandmother and aunt Ida Armstrong. In 1918 his father married Margaret W. Raentsch, also one of the appellants herein, and the boy, then about 9 years old, went to live with them, and shortly thereafter his stepmother formally adopted him. He was the beneficiary of a considerable estate left in trust for him by his deceased mother. It was necessary that a guardian be appointed of his estate, and his father acted in that capacity until the boy was about 15 years old, when the father resigned and the stepmother was substituted. In 1931, young Raentsch married Mary E. Daniels, but they were divorced in 1934, and she remarried in 1936.

In April, 1937, Karl Raentsch, Jr., made an unsuccessful attempt to take his own life by inhaling carbon monoxide gas. Following the attempted suicide he spent about a month in a sanitarium and then went to the home of his stepmother, Margaret W. Raentsch. He remained with her about a month, and in May or June of 1937 went to Arizona to visit a former college friend and room mate, Paul M. Brophy. He died there on August 14, 1937.

Shortly after his death, Messrs. White & Harber, of Sacramento, who had been the attorneys for the deceased, received from Paul Brophy, a document, which was later admitted as the last will and testament of Karl R. Raentsch, deceased.

At an appointed time there were gathered in the office of these attorneys, Ida M. Armstrong and Agnes Armstrong Harrison, his aunts, Margaret W. Raentsch, his stepmother, and a Mrs. Morris Carden, and to them the will was then read.

What happened at that time, as testified to by Margaret W. Raentsch, is that before the reading had continued very far she realized there was a later will and so stated to those assembled. When asked in what way the later will differed from the will then being read she replied there were some variations, one was that in the later will Mrs. Harrison was mentioned as sharing equally with her sister Ida Armstrong,

whereas in the earlier one Mrs. Harrison was not mentioned, nor was there any reference to insurance, and in the later will the father was bequeathed $10 instead of $1.

Mrs. Agnes Armstrong Harrison testified that as nearly as she could remember, Mrs. Raentsch there said she had seen a later will which left the property "to you and Ida" (referring to Agnes Armstrong Harrison and Ida M. Armstrong), and she also said "that was what was in the newspapers." Mrs. Harrison then remarked "Yes, we saw what was in the newspapers, that he had left his property to his aunts, but we did not see the item in the papers stating who the aunts were, and do you know he had an aunt in Germany?" To which Mrs. Raentsch replied, "No, he mentioned your name." Upon further examination concerning this conversation Mrs. Raentsch said: "I said at that time he left his property to his aunts, and naturally meant Ida Armstrong and Agnes Harrison."

At the time young Raentsch attempted suicide there was found in his car an envelope on which was written the following: "Last will and testament. To Karl L. A. Raentsch 10.00 M. W. Raentsch 10.00 I. M. Armstrong everything I have—Karl L. A. Raentsch has had plenty. M. W. Winters also. Karl R. Raentsch." This instrument was found by the Chief of Police, who was searching the car, and was handed to the constable who was then about to accompany the young man to the hospital.

Accounts of these incidents were reported in the local papers, which were seen and read by the various interested parties, including Margaret W. Raentsch. One account said, "A note was left in the car, willing $10.00 to his father and the balance of his property to several aunts," and another, " . . . and the bulk of his property to his aunts."

After young Raentsch had been removed from the scene of the attempted suicide, the Chief of Police continued his search of the car and found a second memorandum in the following words: "April 12/37. To whom it may concern. To M. W. Winter's–Raentsch I leave the sum of $10.00. She has had plenty. To Karl L. A. Raentsch I leave the sum of ten bucks—$10—the". This latter writing was retained by the officer and its existence revealed to no one until shortly before the contest, when he showed it to one of the attorneys for the proponent of the will. Neither of these in-

struments were holographic wills, as one was not dated, and the other was not signed.

The record also indicates that the deceased and his father had been estranged for several years before his death, and were quite bitter. Margaret W. Raentsch and Karl L. A. Raentsch were divorced in 1934. During the period Margaret W. Raentsch served as the guardian of young Karl Raentsch she was given a monthly allowance for his maintenance and education, and when he attained his majority she was allowed $1520 for her services as guardian. Young Raentsch expressed dissatisfaction at her obtaining this allowance, and after that they were not as friendly as they had formerly been.

Mr. Brophy testified that a few hours after the arrival of Karl Raentsch at his home in Arizona, Raentsch told him of his attempted suicide and then told him that "all his valuables, and all his belongings were in that bag, and he said at that time that his will was in that bag." At a subsequent time the testator read the will to his friend Brophy, and at the time telling him it was his will. After his death Brophy found the instrument in the bag and sent it to Messrs. White and Harber in Sacramento, who, Brophy learned from other papers in the bag, were the attorneys for Raentsch, and it was thereafter offered for probate.

This will, holographic in form, was dated February 16, 1936, and left to the father $1, one-half the income to his former wife Mary E. Daniels until she remarried or died, and also to her a wrist watch; a pair of field glasses to Paul Brophy, and also an express wish that out of his insurance money Ida M. Armstrong pay to Paul Brophy $1,000, and all of the residue and remainder to Ida M. Armstrong.

In support of her claim that there was a later will, Mrs. Raentsch testified that after the attempted suicide and after young Raentsch had left the sanitarium he came to her home in San Francisco. One evening as they sat in front of an open fire, burning some old letters and papers, she said young Raentsch handed her "something that he said he felt embarrassed about, among his effects, when he was discovered, I think by the Constable of Dixon. . . . Here is the famous will. . . . " He then handed her a document entirely writ-

ten, dated and signed by him. She could not recall the exact date but thought it was April 12, 1937, being a day before his attempted suicide. As to the contents, her recollection was about the same as the admitted will except the balance of the property was given to Ida M. Armstrong and Agnes Armstrong Harrison. She could not recall what he did with the paper, whether he burned it up or returned it to the leather bag which had the combination lock, and in which he kept his things of value. At one time the witness testified the instrument, written in ink on two sheets of typewriter paper, was not enclosed in an envelope. At another point in her testimony she stated the will was enclosed in an envelope, plain white in letter size.

She also testified that the deceased and a mutual friend had dinner together the evening he returned from the sanitarium, and the friend chided him for not remembering his stepmother in his attempted bequests found in the car, and on the following evening, Mrs. Raentsch testified, he repeated the conversation between himself and the friend about omitting her, and that he seemed embarrassed and said he didn't know what he could have been thinking of in not remembering her, and said "here is the famous will." It is to be recalled, however, that in the second paper found by the Chief of Police and retained by him and not exhibited to the contestants until after the foregoing testimony by Mrs. Raentsch, young Raentsch had remembered his stepmother, and had attempted to leave her $10, reciting that she had had plenty.

It is also to be noticed that in all the testimony by Mrs. Raentsch as to the contents of the purported will she did not mention remembering a clause revoking any former will, and did not set up that fact in the verified opposition to the probate of the will, and it was not until after a demurrer had been sustained upon that ground that such additional averment was set out in the opposition and consent, and an express revocatory clause alleged and recalled. It would also seem probable that the reference to "the famous will" was to the instrument referred to in the newspapers, as that was the only "famous will" then known.

Upon the foregoing testimony the trial court admitted the proffered will to probate.

The first point urged by the appellants is that the court failed to make any findings of fact on the issues of a later will. The only issue, however, for the court to determine was whether the document bearing date of February 16, 1936, which the court admitted to probate, was the last will and testament of the testator. The court having found it was his last will and testament, and that it had not been cancelled or revoked, it was not necessary to make a further finding to the effect that the testator did not leave a later will. That fact was included in what had already been found to be true.

It is next urged that the evidence was insufficient to support a finding in favor of the proponents, contending apparently that the testimony of one witness was sufficient to establish the fact that there was a later will than the one admitted, and that it contained an express revocatory clause. Margaret W. Raentsch was the only witness to so testify, but the trial court was not bound to accept such testimony at its face value. She was a witness vitally interested in the issue, for if young Raentsch died intestate she, as the adoptive mother, stood to inherit a substantial portion of the estate. There is no corroborative evidence, whether direct or circumstantial. Her testimony was not clear and convincing, and in certain instances she contradicted herself. Under such circumstances it was the duty of the court to weigh the evidence and to judge of the credibility of the witness. A trial judge of experience, known for his thoughtfulness in the handling of probate matters, passed upon these issues, and he found against the contention of appellants. After stating orally in open court his views of the issues in answer to an inquiry by appellants' counsel, the court said:

"Mr. Hix, I dislike to say that I view with distrust the testimony of a woman who impresses me as being a lady, and the best that I can do is to say that I have reconciled the conflict upon the basis that she has received impressions which are erroneous; that she fully believes them to be true, but that she probably received false impressions from a combination of circumstances. . . . "

It is also claimed the court applied a too stringent test in determining the degree of proof required to overcome an instrument offered for probate, but the record does not support this contention.

Further details of the facts and deductions that the court might have drawn could be given, but enough has been said to make clear the issues before the court and the correctness of the judgment based thereon.

The judgment is affirmed.

Thompson, J., and Tuttle, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 7, 1941.